IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

SHIRLEY D. KING,                                )    CIVIL ACTION NO. 9:13-0250-TLW-BM
                                                )
                                                )
              Plaintiff,                        )
                                                )
v.                                              )    **REPORT AND RECOMMENDATION**
                                                )
CAROLYN W. COLVIN,[1]                           )
COMMISSIONER OF SOCIAL                          )
SECURITY ADMINISTRATION,                        )
                                                )
              Defendant.                        )
_____        )

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI)[2] on September 29, 2009 (protective filing date), alleging disability beginning July 1,

_____

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

[2]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. (continued...)



2008 due to depression, carpal tunnel syndrome, and shortness of breath.  (R.pp. 143, 149).

Plaintiff's claims were denied both initially and upon reconsideration.  Plaintiff then requested a

hearing before an Administrative Law Judge (ALJ), which was held on April 6, 2011.  (R.pp. 43-77).

The ALJ thereafter denied Plaintiff's claims in a decision issued June 22, 2011.  (R.pp. 18-27).  The

Appeals Council denied Plaintiff's request for a review of the decision, thereby making the

determination of the ALJ the final decision of the Commissioner.  (R.pp. 1-4).

Plaintiff then filed this action in United States District Court.  Plaintiff asserts that

there is not substantial evidence to support the ALJ's decision, and that the decision should be

reversed and remanded for further consideration, or for an outright award of benefits.   The

Commissioner contends that the decision to deny benefits is supported by substantial evidence, and

that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the

Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate

conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan,

907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978);

Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence

to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial

evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion.  It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance.  **If there is evidence to justify refusal to direct**

---

[2](...continued)
1999)[Discussing the difference between DIB and SSI benefits].



> **a verdict were the case before a jury, then there is "substantial evidence."**
> [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-seven (47) years old when she alleges she became disabled, has a high school education plus some additional vocational education, with past relevant work experience as a housekeeper/cleaner. (R.pp. 49, 111, 133). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[3] of depression, anxiety, and a mood disorder, she nevertheless retained the residual functional capacity (RFC) to perform her past relevant work as a housekeeper, and was therefore not entitled to disability benefits. (R.pp. 20, 22, 26-27).

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



Plaintiff asserts that in reaching this decision, the ALJ erred by improperly giving little weight to the opinion of her treating psychiatrist, Dr. Frank Forsthoefel, and by improperly determining that Plaintiff retained the RFC to perform her past relevant work. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Medical Record)

Plaintiff started seeing Dr. Forsthoefel, a psychiatrist with the Spartanburg Area Mental Health Center, in December 2005. (R.pp. 267, 375). When Dr. Forsthoefel saw Plaintiff on December 30, 2005, it was apparently the first time she had been seen at the Health Center since March 2005. It was noted at that time that Plaintiff had been "compliant with her medications without side effects", that she was "depression free for the most part", and that she "works in housekeeping and enjoys her work". Plaintiff's diagnosis was major depression (recurrent, non-psychotic), and dysthymia,[4] with a GAF of 60.[5] Plaintiff continued thereafter to be seen periodically

---

[4]Dysthymia is a mild but long-term (chronic) form of depression. Symptoms usually last for at least two years, and often for much longer than that. http://www.mayoclinic.org/diseases-conditions/dysthymia/basics/definition/con-20033879, Dec. 20, 2012.

[5]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF of 51 to 60 indicates that only moderate symptoms are present; Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 (continued...)



at the Spartanburg Area Mental Health Center by Dr. Forsthoefel, who prescribed Zoloft for her complaints. (R.pp. 259-260, 263-267, 272-274). On August 15, 2007 (the last treatment note from Dr. Forsthoefel prior to Plaintiff's alleged disability onset date), Plaintiff was noted to be compliant with her medication (Zoloft) without any significant continuing depression and with no side effects. It was further noted that Plaintiff was continuing to work in housekeeping at Spartanburg Community College, had "many friends", and a GAF of 70.[6] (R.p. 262).

On July 16, 2008, which was now *after* Plaintiff alleges her condition became disabling, Dr. Forsthoefel conducted a mental status examination of the Plaintiff and found her to be "alert, pleasant, [and] animated . . . with no obvious depressive affect". While Dr. Forsthoefel reiterated his diagnosis of major depression and dysthymia, he noted that Plaintiff continued "to remain at baseline with her dysthymia with occasional depression only", that she was compliant with her medications without any side effects, that her life was "going quite well both at home with her many friends and with her fiancé as well", and that she continued to function "quite well in her every day life including her work as a housekeeper at Spartanburg Community College". She again had a GAF on that day of 70. (R.p. 311). By December 3, 2008 (now going on six months after Plaintiff alleges she had become disabled), Dr. Forsthoefel opined that Plaintiff continued to do "extremely well", noting that she remained "a little depressed everyday but certainly the depression is not significant". He also noted that although Plaintiff had left her job as a housekeeper at Spartanburg Community College because she said it was too "stressful", she was functioning "beautifully" in her

---

[5](...continued)
F.Supp.2d 1208, 1211 (D.Kan. 2000); with Plaintiff's rating being at the top end of that category.

[6]A GAF score of 70 indicates only some mild symptoms to be present. Simons v. Barnhart, No. 04-5021, 2004 WL 2633448, at **2 (4th Cir. Nov. 18, 2004).



present job as a housekeeper with a couple of banks as well as working on her own, where she was doing "a very good job without anxiety". (R.p. 310).

On March 18, 2009 Plaintiff was seen at the Mental Health Center by a different physician, Dr. Catherine Kreiser, complaining of suicidal thoughts. Plaintiff complained that she had "felt more depressed for the last two months", and that she had attempted to swallow some pills two or three days previous. Plaintiff advised Dr. Kreiser that she was now cleaning three banks, as opposed to two previously, and that while she loved her job, cleaning three banks was more stressful. She also complained that Zoloft had not been working as well recently. On examination Dr. Kreiser found Plaintiff to be a pleasant woman with good eye contact, although a bit fidgety; her speech was normal; she was able to joke and smile easily; and there was no evidence of psychosis. Dr. Kreiser discontinued Plaintiff's Zoloft and began her on Fluoxetine and Trazodone. Plaintiff was advised to call if any suicidal thoughts returned. (R.p. 309).

The following month Plaintiff was seen at the Spartanburg Regional Medical Center emergency room for depression and suicidal ideation after finding out that her father had passed away. Plaintiff had a depressed affect, but was alert and oriented. While displaying little judgment or insight, she had a good recent and remote memory, her mood was cooperative and appropriate, she maintained direct eye contact, her thought process was normal/logical, and she appeared to be of average intelligence. (R.p. 285-287). The hospital notes also indicate that the police were to be notified when Plaintiff was discharged, because she had a pending assault charge. (R.p. 288).

Plaintiff returned to see Dr. Forsthoefel on May 20, 2009, who noted that she had been seen by Dr. Kreiser on March 18, 2009. Plaintiff advised that her Prozac prescription was "definitely working", and she appeared "more animated with considerable energy". Plaintiff still complained of some continuing depression, but remained employed (although she had cut back on her work



because of stress), was doing well and making ends meet financially, and was in close touch with her family and felt "wonderful" about that.  Plaintiff, who was described by Dr. Forsthoefel as being only "mildly despondent", spoke "logically and coherently and relevantly without any perceptual findings and without any danger to self or others at the time of the interview".  Plaintiff had a GAF on that date of 60.  (R.p. 307).  This was now almost eleven months *after* Plaintiff alleges her condition had become disabling.

Plaintiff returned to see Dr. Forsthoefel six months later, October 28, 2009, at which time Plaintiff advised she was going through menopause resulting in hot flashes and other symptoms and complained that her depression had worsened and that Prozac was not helping her anymore. Plaintiff also advised Dr. Forsthoefel that she was "applying for supplemental SSI and accordingly feels that she can no longer work and requires assistance along those lines". Dr. Forsthoefel recommended an increase in her Prozac dosage as well as that she take Depakote as a mood stabilizer. On examination, Dr. Forsthoefel found that Plaintiff was alert, responsive, despondent, and nervous; and spoke logically, coherently and relevantly without any perceptual findings.  It was noted that Plaintiff was still working, but that Plaintiff saw housekeeping as a "demanding job", that her interest and motivation were all "very poor", and that Plaintiff complained she was forgetful at work and feared losing her new job.  Although Plaintiff was still working, Dr. Forsthoefel stated that she was "almost totally and permanently disabled from all work at this time", and assigned her a GAF of 50.[7] (R.p. 361).

Dr. Forsthoefel recommended that Plaintiff return in two months, and he saw her again

---

[7]"A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". <u>Boyd v. Apfel</u>, 239 F.3d 698, 702 (5th Cir. 2001).



on December 21, 2009. Dr. Forsthoefel noted that the adjustments to Plaintiff's medications had affected "some minimal remission" of her depression, and that she was continuing to work two hours a day cleaning buildings but was not able to work more than that because of impaired concentration, memory, energy and motivation, as well as chronic pain from carpal tunnel syndrome and osteoarthritis of both knees.[8] Dr. Forsthoefel performed a mental status examination, finding that Plaintiff was an alert, responsive, sad appearing lady who spoke logically and coherently and relevantly without any perceptual findings and with no indication that she was a danger to herself or others. He nevertheless again assigned her a GAF of 50, and opined that she was "almost and most likely totally and permanently disabled from all work at this time despite her working a couple of hours a day". (R.p. 360).

On February 17, 2010, Plaintiff had a consultative mental status examination performed by Dr. James Ruffing. Plaintiff told Dr. Ruffing that she was unable to work due to chronic depression and a pinched nerve and panic attacks which tended to "come and go when she is upset and will last a few minutes occurring maybe twice a month". Plaintiff advised that she had worked in housekeeping for about twenty years until June or July of 2003, when she quit because she had almost had a nervous breakdown.[9] Plaintiff also advised Dr. Ruffing that she tended to stay to

---

[8]Although Plaintiff relayed these complaints to Dr. Forsthoefel, in his decision the ALJ found that Plaintiff's complaints of carpal tunnel and knee pain were not supported by any longitudinal or objective medical evidence, as the medical findings discounted the possibility of carpal tunnel syndrome while the arthritic changes in Plaintiff's knees were deemed to be no more than minimal. Neither of these complaints was found to be a severe impairment. (R.p. 21). See also (R.pp. 318, 327-330).

[9]This is five years *before* Plaintiff alleges she became disabled. Further, Plaintiff's statement to Dr. Ruffing that she quit working in 2003 is (notably) notwithstanding the ample evidence in the record that Plaintiff in fact worked in her profession long after 2003. Cf. Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the (continued...)



herself and isolate her socially, that she always had been a loner and did not get out much, and complained of being depressed and nervous and rated her depression as a 99 on a scale of 100.

Dr. Ruffing reviewed Plaintiff's medical records and history, noting that she was able to care for her personal needs, drive, attend church services typically twice a month, go to the store for herself and use cash to pay for items, pay her bills, and participate in meal preparation at home as well as perform various household chores such as cleaning and laundry. Plaintiff was also able to accurately and completely complete the intake questionnaire; she was adequately groomed and dressed; was alert, involved, responsive, pleasant and cooperative throughout her examination; and she maintained eye contact during the exam although she was tearful. Her speech was spontaneous and responsive. Dr. Ruffing observed that Plaintiff seemed rather anxious during her examination, but was fully oriented to time, place, person, and situation and demonstrated an adequate stream of consciousness. Her thought processes appeared to be intact, relevant, coherent and goal directed, and Dr. Ruffing did not see any evidence of poverty of thought, confusion, or tangentiality. There was also no evidence of psychosis of lack of reality contact, and Plaintiff did not manifest hallucinations, delusions, or paranoia. Plaintiff also attended and focused without significant distractability, although Dr. Ruffing suspected that her level of anxiousness could at times make it difficult for her to focus and attend fully. She demonstrated normal cognitive processing speed, her memory functioning appeared grossly intact, but she was inconsistent in her ability to do simple calculations. Dr. Ruffing suspected the Plaintiff might have some limitations in her cognitive ability quite possibly consistent with borderline intellectual functioning, although that would need to be objectively measured, and

---

[9](...continued)
claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"].



that while Plaintiff was able to understand and respond to the spoken word, her emotional instability might at times make it difficult for her to focus and attend fully and consistently. She did appear to have minimal cognitive faculties necessary to manage her finances, but he believed she would likely struggle to manage the concentration, persistence and pace required in a typical work environment due to her emotional state. (R.pp. 331-334).

On March 16, 2010, state agency physician Dr. Gary Calhoun completed Psychiatric Review Technique and Mental Residual Functional Capacity assessment forms after a review of Plaintiff's medical records in which he concluded that Plaintiff's depression and anxiety resulted in a mild restriction in her activities of daily living, and a moderate restriction in her ability to maintain social functioning and with respect to concentration, persistence or pace. (R.p. 348). A more detailed breakdown of his findings showed that while Plaintiff was moderately limited in her ability to understand and remember or carry out detailed instructions, interact appropriately with the general public, or maintain attention and concentration for extended periods, she otherwise was not significantly limited, including in her ability to understand and remember or carry out short and simple instructions, sustain an ordinary routine and perform activities within a schedule, make simple work related decisions and work in coordination or proximity with others, complete a normal work day and work week and perform at a persistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, get along with coworkers, and maintain socially appropriate behavior. (R.pp. 352-353).

Plaintiff returned to see Dr. Forsthoefel on April 12, 2010, who noted that although she continued to suffer from continuing depression she was "able to work cleaning a bank building two hours a days, six days a week and does enjoy her job". Plaintiff told Dr. Forsthoefel that although she did not have carpal tunnel syndrome, she did have a pinched nerve in that area, and that



10

because of problems with her arthritic knees and her depression she was unable to work longer than that. On examination Dr. Forsthoefel found Plaintiff to be alert and pleasant with a good attitude about life and living, she spoke logically and coherently and relevantly with no perceptual findings and no indication that she was a danger to herself or others, and was only "mildly despondent". Notwithstanding these generally mild objective findings, however, Dr. Forsthoefel wrote that due to Plaintiff's "continuing mood lability, varied interest level and motivation with impaired concentration and memory and associated withdrawal that she remains totally and permanently disabled from all work despite her excellent motivation and good attitude". He again assigned her a GAF of 50. (R.p. 359).

On June 15, 2010, another state agency physician, Dr. Charles Lawrence, reviewed Plaintiff's medical records and came to the same conclusions with respect to Plaintiff's functional capacity as had Dr. Calhoun. In doing so, Dr. Lawrence noted that while Plaintiff complained of depression, her mental status findings did not reflect that she was suffering from severe depression. He also noted that while Plaintiff's progress notes from Dr. Forsthoefel referred to impaired concentration and memory, there were no findings or observations to document any impairment of concentration or memory, while Dr. Forsthoefel's "conclusory opinion" that Plaintiff was totally and permanently disabled from all work was "hardly consistent with the fact that the claimant was actually working at the time the note was written". (R.p. 370).

Plaintiff was seen again by Dr. Forsthoefel on August 30, 2010, at which time he noted she was "actively grieving" the death of a good friend the previous night. She told Dr. Forsthoefel that even before her friend's death her depression was worse with greater mood lability and tearfulness, and that she was "so moody even before the death of her friend that her concentration and memory was impaired with associated tearfulness that would compromise her functioning in everyday

11



activities". However, she also advised Dr. Forsthoefel that she had "on her own" stopped taking her prescribed Depakote and Trazodone "some months ago". Dr. Forsthoefel indicated that he would place her back on Depakote, and on examination he found Plaintiff to be alert and pleasant with no evidence of any perceptual findings and no evidence of her being an immediate danger to herself or others, describing Plaintiff as being a tearful and grieving lady "who spoke logically and coherently and relevantly about her recent loss". Nonetheless, Dr. Forsthoefel continued to recommend Plaintiff for Social Security Disability and assigned her a GAF of 50. (R.p. 389).

On December 20, 2010, Dr. Forsthoefel wrote out a statement indicating that he had been seeing Plaintiff as her psychiatrist since December 30, 2005, and that he had diagnosed Plaintiff with dysthymia disorder and major depression, recurrent, severe, and chronic. He described chronic depression as being a low grade depression that never completely goes away (dysthymia), but that Plaintiff also experienced episodes of major depression. He acknowledged that from July 2008 to May 2009 Plaintiff had an improved GAF, but opined that over approximately the past year she had been struggling with the return of her major depression. He indicated that he had changed her medications on her last visit in August 2010, and that he did not know yet if these changes had helped her. He opined that, for approximately the past year, Plaintiff would have suffered from interruptions to concentration sufficient to frequently interrupt tasks throughout the workday, while her poor energy and forgetfulness associated with her depression would have caused her attendance problems. (R.p. 375).

This statement was written by Dr. Forsthoefel in December 2010 (four months after he had last seen the Plaintiff in August). He did not actually see Plaintiff again until May 18, 2011 (a gap of nine months), at which time he found that she had a "continued low grade depression with excellent psycho-social coping mechanisms and with good functioning and good support system."



He further noted that Plaintiff "remains in good health", and that her only complaint was "trouble" sleeping. Plaintiff had an appropriate affect and a euthymic mood, and was assigned a GAF of 60. (R.p. 385).

## II.

### (Dr. Forsthoefel's Opinion)

Plaintiff's first claim of error is that the ALJ erred by improperly giving little weight to the opinion of Dr. Forsthoefel, her treating psychiatrist, that she was permanently disabled from all work. Plaintiff is correct that a treating physician's opinion as to a patient's condition and functional limitations should ordinarily be accorded great weight. See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions]. However, the opinions of a treating physician are not entitled to great weight where they are contradicted by the physician's own treatment notes, or by other evidence. See Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)]; Burch v. Apfel, 9 Fed.Appx. 255 (4th Cir. 2001) [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.].

Here, the ALJ found that Dr. Forsthoefel's opinion that Plaintiff was totally disabled from performing any work was entitled to little weight because it was not based on any objective medical findings and was further contradicted by his own records. (R.pp. 25-26). The ALJ noted that Dr. Forsthoefel's own medical notes reflect that early on (including *after* Plaintiff claims her depression and anxiety had become disabling) Plaintiff had GAFs as high as 70, and that even as late as May 2009 (almost a year after Plaintiff alleges her condition became disabling) Plaintiff felt "wonderful" and was only "mildly despondent" with a GAF of 60. (R.pp. 25, 307, 311). The ALJ



further noted that, while Plaintiff thereafter described her condition as worsening and Dr. Forsthoefel

started assigning her GAFs of 50, Plaintiff was still working even while Dr. Forsthoefel was opining

that she was totally and permanently disabled from all work.  (R.pp. 26, 361).[10]

        The ALJ also notes that, over the course of the following months, while Dr.

Forsthoefel continued to opine that Plaintiff was permanently and totally disabled, Plaintiff was being

treated conservatively with prescription medication and routine follow-up examinations that were

months apart; cf. Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[conservative treatment

inconsistent with allegations of disability]; that Plaintiff continued to work, that Dr. Forsthoefel's

own notes indicated an improvement in Plaintiff's condition and improving GAF scores, and that his

opinion appeared to be based on "little more than [a] regurgitation of [Plaintiff's] self-reported

limitations and allegations".  (R.p. 26).  Cf. Craig, 76 F.3d at 589-590 ["There is nothing objective

about a doctor saying, without more, 'I observed my patient telling me she was in pain'"].  A review

of Dr. Forsthoefel's medical records confirms these findings.  Although Dr. Forsthoefel assigned

Plaintiff a GAF of 50 on her visit of April 12, 2010, on examination he found Plaintiff to be alert and

pleasant with a good attitude about life and living and only "mildly despondent"; on August 30, 2010

Plaintiff was again alert and pleasant with no evidence of any perceptual findings even though she

was grieving the recent death of a friend and had even stopped taking her medications "some months

ago"; and as late as May 18, 2011 Dr. Forsthoefel reported that Plaintiff only had a "low grade

depression with excellent psycho-social coping mechanisms and with good functioning", and a GAF

---

[10]The ALJ also noted that Dr. Forsthoefel's conclusion that Plaintiff was "permanently and totally
disabled" was a decision reserved to the Commissioner.  (R.p. 26).  See Castellano v. Secretary of
Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is
totally disabled "is not dispositive because final responsibility for determining the ultimate issue of
disability is reserved to the [Commissioner]"; 20 C.F.R. § 404.1527(e) ["a statement that you are
'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].



of 60.  See generally, (R.pp. 359, 385, 389).  Hence, the undersigned can discern no reversible error

in the ALJ's findings and conclusions, as Dr. Forsthoefel's own examination findings generally did

not support the degree of limitation he describes.  Hays, 907 F.2d at 1456 [It is the responsibility of

the ALJ to weigh the evidence and resolve conflicts in that evidence]; see also Burch, 9 Fed.Appx.

at 255 [ALJ did not err in giving physician's opinion little weight where the physician's opinion was

not consistent with her own progress notes.]; cf. Craig, 76 F.3d at 589-590 ["There is nothing

objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"];

Cruse, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate

a finding of disability]; see also Jolley v. Weinberger, 537 F.2d at1181 [finding that the objective

medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he

was not disabled].

        In addition to citing the inconsistences between Dr. Forsthoefel's opinion of disability

and his own treatment and examination notes, the ALJ also discusses the findings of Dr. Ruffing, who

noted that Plaintiff was able to engage in such activities as driving, attending church, shopping,

attending to finances, and participating in social engagements, while her overall performance on

numerous administered cognitive drills was deemed satisfactory.  (R.pp. 23, 331-334).  See also

(R.pp. 54, 60-62, 66-69).[11]  See Richardson v Perales, 402, U.S. 389, 408 (1971)[assessment of

examining physicians may constitute substantial evidence in support of a finding of non-disability];

Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies

between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the

---

[11]Plaintiff testified that she took care of her friend, who had cancer for two years, which included
caring for the house, cooking, cleaning and doing laundry.  (R.pp. 54, 66).  Petitioner also testified
that she drove to the banks where she worked, to the hearing, and to a bar where she sang karaoke.
(R.pp. 60-62, 69).  She also went to flea markets and yard sales to purchase books.  (R.p. 68).



plaintiff's subjective complaints]; cf. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating impairments where she engaged in a variety of activities]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations]. The ALJ also noted Dr. Ruffing's conclusion that Plaintiff's capacity for consistent focus and attention was not complete, and that she would have some difficulty with proper concentration, persistence, and pace in a typical work environment, but discounted that finding since this was a one time examination and Plaintiff subsequently demonstrated this ability through actual work. (R.p. 23). See (R.p. 359) [Office notes from visit by the Plaintiff to Dr. Forsthoefel on April 12, 2010, two months after her examination by Dr. Ruffing, where it was noted that Plaintiff was still working cleaning a bank building two hours a day, six days a week, and enjoyed her job even though she complained of impaired concentration and memory as a result of her condition]. Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Ables v. Astrue, No. 10-3203, 2012 WL 967355 at * 11 (D.S.C. Mar. 21, 2012)["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96-7 p.].

In any event, in assigning Plaintiff's RFC, the ALJ found that Plaintiff was moderately restricted with regard to her concentration, persistence or pace, a finding consistent with Dr. Ruffing's general conclusion that Plaintiff would have difficulty maintaining her concentration in a "typical" work environment, and therefore limited her to jobs that required only simple, routine, and repetitive tasks for a two hour period during any given eight hour day. (R.pp. 21-22). The ALJ's RFC finding



is further supported by the findings of Dr. Calhoun, who also relied on the findings of Dr. Ruffing. Indeed, the ALJ's RFC for the Plaintiff as set forth in the decision tracts the findings and conclusions of Dr. Calhoun, findings and conclusions which are also supported by Dr. Lawrence. (R.pp. 21-22); see also (R.pp. 348, 352-353, 370). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993)[". . .What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"].

           In sum, after a review of the decision and the record in this case, the undersigned does not find that the ALJ improperly considered and evaluated Dr. Forsthoefel's records or opinions as part of his analysis of the overall record and evidence in this case, nor does the undersigned find that the ALJ failed to provide an explanation for his treatment of Dr. Forsthoefel's opinion. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]. The record contains substantial evidence to support the findings and conclusions of the ALJ, and Plaintiff's argument that the ALJ committed reversible error by not accepting the extent of limitation opined to by Dr. Forsthoefel, or that he otherwise did not justify in his decision why he was rejecting this opinion or cite to any other contrary evidence, is without merit. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; see Burch, 9 Fed.Appx. at 255



[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; <u>see</u> <u>also</u> <u>Smith v. Chater</u>, 99 F.3d 635, 638 (4th Cir. 1996)["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

## III.

### (Finding that Plaintiff Could Perform Her Past Relevant Work)

Finally, Plaintiff asserts that the ALJ improperly determined that she retained the RFC to perform her past relevant work as a housekeeper. This claim is without merit.

In his decision, the ALJ did not find that Plaintiff's complaints of carpal tunnel syndrome and knee pain were supported by any objective medical evidence, or that either of these claimed impairments, either by themselves or together in combination, created any significant or substantial limitation in Plaintiff's ability to engage in any kind of work or work related activity. (R.p. 21). Substantial evidence supports this finding; <u>see also</u>, n.8, <u>supra</u>; and indeed Plaintiff herself limits her arguments to how and to what extent her mental impairment precluded her from performing substantial gainful activity. <u>See</u> <u>generally</u>, Plaintiff's Brief, pp. 20-21.

With respect to Plaintiff's mental impairment, the ALJ determined that Plaintiff had a mild restriction in her activities of daily living, and moderate difficulties in social functioning, and with regard to concentration, persistence or pace. (R.p. 21). For the reasons already discussed and set forth herein, <u>supra</u>, these findings are supported by substantial evidence. <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]. Plaintiff argues, however, that in finding that these limitations did not preclude her from performing her past relevant work, the ALJ failed to evaluate the mental demands of Plaintiff's past work, noting that Plaintiff testified her housekeeping jobs were "so stressful for me and my nerves were so bad, I just, I couldn't handle that kind . . . it was a lot of work to be done in



a certain length of time". (R.p. 50).

In determining whether Plaintiff could perform her past relevant work, the ALJ obtained testimony from a Vocational Expert, who testified that Plaintiff's past work as a housekeeper was unskilled work consistent with the description for this position contained in DOT No. 323.687-014.[12] (R.pp. 72-73). The ALJ then asked the VE whether someone with Plaintiff's moderate mental limitations as described (specifically referencing Dr. Calhoun's restrictions, which were adopted by the ALJ) and restricted to simple, routine, repetitive tasks at Level 3 reasoning per the DOT for two hour periods in an eight hour day, with the ability to interact occasionally with the public and interact appropriately with co-workers and supervisors in this type of simple, routine setting, could perform Plaintiff's past work, and the VE testified that Plaintiff could perform her past relevant work with these restrictions. (R.p. 73). See SSR-00-4p, at * 4 [ALJ may rely on VE's professional experience];[13] Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs].

The ALJ accepted this finding; (R.p. 27); and again the undersigned can discern no reversible error in the ALJ's conclusion or his treatment of this evidence. Cf. Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question

---

[12]The Dictionary of Occupational Titles (DOT) is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).

[13]Pursuant to SSR-00-4p, "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." However, as indicated hereinabove, in this case the VE testified that Plaintiff's past work was consistent with the DOT, and therefore there was no conflict. (R.pp. 72-73).



including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress]; Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Hyser v. Astrue, No. 11-102, 2012 WL 951468 at * 6 (N.D.Ind. Mar. 20, 2012)[Finding limitation to jobs "involving only occasional contact with public and co-workers" accounted for moderate social functioning]; McDonald v. Astrue, 293 Fed. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]; Menkes v. Astrue, 262 Fed. App'x 410, 412 (3d Cir. 2008) ["Having previously acknowledged that [the claimant] suffered moderate limitations in concentration, persistence and pace, the ALJ [properly] accounted for these mental limitations in the hypothetical question by restricting the type of work to 'simple routine tasks.'"];see also Sensing v. Astrue, No. 10-3084, 2012 WL 1016581 at * 7 (D.S.C. Mar. 26, 2012).

The ALJ's hypothetical to the VE accounted for all credibly established medical findings in the record and as determined by the ALJ's RFC finding, and his reliance on this testimony and finding that Plaintiff could perform her past relevant work with her limitations is therefore not grounds for reversal of the decision. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC],



20

adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012).

### **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 8, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

